692 P.2d 368

**Michael F. RAUGUST,**
**Claimant-Appellant,**

v.

**DIAMOND INTERNATIONAL CORPO-**
**RATION,**
**Employer-Defendant-Respondent,**

and

**State of Idaho, Industrial Special In-**
**demnity Fund,**
**Defendant-Respondent.**

Nos. 14548, 14931.

Supreme Court of Idaho.

Dec. 5, 1984.

Michael Verbillis, Coeur d'Alene, for claimant-appellant.

Samuel Eismann, Coeur d'Alene, for defendant-respondent.

Nicholas M. Lamanna, Priest River, for employer-defendant-respondent.

HUNTLEY, Justice.

Michael Raugust worked for Diamond International Corporation for approximately thirteen years before his medical condition required him to stop working in January, 1981. During those years Raugust had a number of industrial accidents, four of which were at issue in two separate cases brought before the Industrial Commission.

In October, 1977, Raugust suffered a low back strain while changing tires. In September, 1980, Raugust jumped from a tugboat onto a sandy beach. He apparently landed on a rock, twisted his leg sideways, and jammed it into his body. Within three months of the tugboat accident, Raugust was diagnosed as having spinal stenosis. Spinal Stenosis is a condition where the spinal canal is narrowed so that the spinal cord and nerves are compressed. Surgery was recommended and carried out early in 1981. Some of the symptoms Raugust experienced after the tugboat accident were new; others had manifested themselves before that accident, but appeared now to be more pronounced. Raugust claimed that total temporary disability and medical benefits were payable to him as a result of either of the accidents, the second one having, according to Raugust, aggravated the pre-existing spinal stenosis condition. The Industrial Commission ruled against Raugust, finding that he had not produced sufficient evidence to show the two accidents caused or aggravated the pre-existing medical condition.

Raugust later filed a claim for total permanent disability and medical benefits based on two accidents which occurred while he was using an impact screwdriver and ballpeen hammer. At these times in April and in June, 1980, he experienced pain in his left forearm, weakness of grip and tingling and numbness in his fingers. Dr. Pike, a neurosurgeon, diagnosed the symptoms as ulnar nerve entrapment. Raugust alleged that these accidents, combined with his pre-existing conditions of spinal stenosis and other neurological complications, rendered him totally and permanently disabled. The Industrial Commission found that Raugust failed to establish a specific accident or accidents, or that he was permanently and totally disabled as a result of the effects of a pre-existing impairment combined with a subsequent injury arising out of employment.

■ Raugust contends on appeal that in both cases he presented evidence sufficient and substantial enough to support a ruling in his favor. The appellate standard of review, however, is not whether the evidence supports a ruling for claimant, but whether the evidence presented reasonably supports the Industrial Commission's decision. We believe that it does, and accordingly affirm as to both cases.

■ Raugust presented extensive testimony from several different physicians, but none linked Raugust's 1977 back strain or the 1980 boat incident with his disability, or with aggravation of his pre-existing condition. Dr. Eggleston, his family physician, testified that in his opinion there was nothing resulting from his low back strain that created an obstacle to Mr. Raugust's employment. Dr. Vincent, a neurosurgeon, testified that a ligamentous injury such as the low back strain would not cause the neurological symptoms Raugust was experiencing. Two other physicians indicated that spinal stenosis can be due to many factors. It may be congenital; or result from a childhood injury, after which the spinal canal narrows from bony spur buildup; or occur after an acute injury such as a ruptured disk or fracture. By and large,

however, stenosis does not occur over short periods of time, for example six months, but rather over a longer period after various injuries and degeneration. Dr. Georgianni, a rehabilitation physician, testified that Raugust's medical history indicated gradual and progressive spinal cord problems, and that it was difficult to pinpoint a time when any particular problem arose. Raugust's counsel asked Dr. Georgianni a hypothetical question describing a flexion or hyperflexion injury of the type that could have occurred during the fall from the tugboat. Assuming such an injury, the doctor felt that "more likely than not that injury would play a contributing role" with the spinal stenosis condition in the development of Raugust's symptoms. The hypothetical question, however, embraced a fact not in evidence, that is, that Raugust had suffered a neck injury. Raugust had never complained of, nor been treated for, a back or neck injury resulting from the boat incident. A hypothetical question may only include facts which have been covered by the evidence. *Evans v. Bannock County*, 59 Idaho 442, 83 P.2d 427 (1938).

In short, the physicians, while stating that the incidents *could* have aggravated the pre-existing condition, could not state with medical probability whether the injuries actually had or had not done so.

With regard to the ulnar nerve problem, the subject of Raugust's second claim, the testimony was similarly inconclusive. I.C. § 72–102(14)(b) defines an accident as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." Raugust had difficulty pinpointing exactly when the "accidents" that were the basis for his claim had occurred. The testimony did not clearly establish that use of particular tools on the job caused some or all of the ulnar nerve palsy. Raugust's testimony, along with his wife's and his family physician's, in fact indicated his problems with hand weakness and numbness were longstanding, dating back to at least 1972, long before any of the incidents which precipitated these claims. Dr. Pike, who operated on Raugust's ulnar nerve, stated that Raugust was 10% impaired, but he could not specify how much impairment resulted for the ulnar nerve palsy and post-surgery problems, and how much from the symptoms of the pre-existing cervical stenosis. Raugust testified that his hand and arm improved enough after surgery that he could return to work, the spinal stenosis problem notwithstanding. Taken as a whole, the testimony fails to show that the ulnar nerve problem, however caused, contributed to Raugust's inability to work; nor did it show that the ulnar nerve problem aggravated a pre-existing condition, thereby resulting in disability.

We have stated that a claimant's proof "must establish a probable, not merely a possible, connection between cause and effect to support his accident." *Callantine v. Blue Ribbon Linen Supply*, 103 Idaho 734, 653 P.2d 455 (1982). Michael Raugust has failed to do so in either of his cases. The Industrial Commission's findings and rulings will not be disturbed on appeal where they are supported by competent evidence.

No attorney fees. Costs to respondents.

DONALDSON, C.J., and SHEPARD, BAKES and BISTLINE, JJ., concur.